**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

LLOYD DAN MURRAY, JR. and JENNIFER
McGHAN, Individually and on behalf of all
others similarly situated,

        Plaintiffs,

        v.

ILG TECHNOLOGIES, LLC, d/b/a ILG
INFORMATION TECHNOLOGIES, and
BARIS MISMAN, Individually and as Sole
Proprietor of ILG INFORMATION
TECHNOLOGIES,

        Defendants.

CIVIL ACTION NO.: 4:18-cv-110

## <u>ORDER</u>

This matter is before the Court on a number of motions including Defendants' Motion for

Summary Judgment, (doc. 10), Plaintiffs' Motion for Class Certification, (doc. 55); Defendants'

Supplemental Motion for Summary Judgment, (doc. 65); Plaintiffs' Motion for Partial Summary

Judgment, (doc. 94); and Plaintiffs' Request for Oral Argument on All Pending Motions, (doc.

101). Plaintiffs Lloyd Murray, Jr. ("Mr. Murray") and Jennifer McGhan ("Ms. McGhan") filed

this putative class action against Defendants ILG Technologies, LLC ("ILG") and Baris Misman

("Mr. Misman"), based on allegations that a software created by Defendants incorrectly

calculated Plaintiffs' bar exam scores. (Doc. 1-3.) Plaintiffs originally filed this suit in the

Superior Court of Bryan County, (<u>id.</u>), and Defendants subsequently removed to this Court, (doc.

1). After Defendants filed their first Motion for Summary Judgment, (doc. 10), Plaintiffs filed a

Response, (doc. 38), and Defendants filed a Reply. (Doc. 44.) Plaintiffs subsequently filed an

Amended Complaint, (doc. 63).[1]  Defendants filed a Supplemental Motion for Summary Judgment addressing the additional causes of action, (doc. 65), to which Plaintiffs responded, (doc. 77), and Defendants replied, (doc. 79).

This case arises out of a cruel twist of events.  Plaintiffs were originally told that they had failed the exam to gain admission to the State Bar of Georgia only to find out months later that they had actually passed the exam.  Plaintiffs contend that Defendants are to blame for their agonizing and costly journey because ILG, a company solely owned by Mr. Misman, provided a software system to aid in the administration of the entire bar admission process.  ILG provided this system pursuant to a contract with the Georgia Office of Bar Admissions.  In their initial Complaint, Plaintiffs levy claims of Breach of Contract, Negligence, and Negligent Misrepresentation.  (Doc. 1-3.)  Plaintiffs also assert a claim for the Regrading of Bar Exams. (Id. at p. 10.)  In their Amended Complaint, Plaintiffs reassert their original claims (with the exception of their request for a regrade) and allege additional claims of Defamation, Negligent Design, and Strict Liability.  (Doc. 63.)  Factually, the parties dispute whether the disastrous glitch in grading Plaintiffs' exams was caused by errors in Defendants' software or errors elsewhere in the examination, grading, and communication process.  Regardless, in their Motions for Summary Judgment, Defendants contend that even if their software factually caused the grading error, Plaintiffs cannot legally recover the damages they seek through any of the asserted claims.

---

[1]  "An amended complaint supersedes the initial complaint and becomes the operative pleading in the case[.]"  Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007).  Though Defendant's first Motion for Summary Judgment was filed prior to Plaintiffs' Amended Complaint, the claims addressed in the first Motion were not altered by the second filing.  As it is the operative pleading, the Court will cite to the Amended Complaint in lieu of the original.

Defendants' Motions call for this Court to resolve the parties' arguments based on the substantive law of Georgia as set forth by the Georgia General Assembly and the state's appellate courts. After a thorough review of that law and its application to the facts of this case, the Court finds that it must grant Defendants' Motions. As explained below, Plaintiffs cannot recover for breach of contract because they are not in privity of contract with Defendants and are not third-party beneficiaries of Defendant ILG's contract with the Office of Bar Admissions. Moreover, Georgia's economic loss rule bars Plaintiffs' general negligence, strict liability, and negligent design claims, and the undisputed evidence thwarts Plaintiffs' claims of negligent misrepresentation and defamation. The Court is mindful that this result may seem like another hapless turn in Plaintiffs' harrowing saga. However, this Court's obligation is to say what the law is, not what it should be. Having fulfilled that responsibility and applied that law to the facts of this case, the Court **GRANTS** Defendants' Motions for Summary Judgment, (docs. 10, 65) and **DENIES as moot** all other pending motions in this case.

## BACKGROUND[2]

The incidents giving rise to this action came to light on September 6, 2016. (Doc. 10-2, p. 1.) On that day, the Georgia Board of Bar Examiners announced that ninety people who took the July 2015 and February 2016 Georgia bar exams—forty-five from each exam—were incorrectly assigned failing scores. (Id.) In fact, these ninety individuals had passed their respective exams. (Id.) Plaintiffs Murray and McGhan were two such persons. (Doc. 1-3, p. 2.) Plaintiffs filed this putative class action against Defendants on behalf of all ninety test takers. (Id. at pp. 3, 6.)

---

[2] The recited facts represent the facts in the record with all reasonable inferences drawn in the light most favorable to Plaintiffs, the non-moving parties with regard to the summary judgment motion. See Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).

## I.  The Bar Admission Process and Exam Scoring

A person who wishes to practice law in the state of Georgia must first be admitted pursuant to the Rules promulgated by the Supreme Court of Georgia.  (Doc. 10-3, p. 5.)  This process is handled by two boards—the Board to Determine Character and Fitness, and the Board of Bar Examiners.  (Doc. 38, p. 3.)  The Office of Bar Admissions ("OBA") provides administrative support to both Boards.  (Id.)  Prior to sitting for the Georgia Bar Exam, applicants' credentials are reviewed by the Board to Determine Character and Fitness.  (Doc. 37-12, p. 9.)  Applicants who pass this stage are then permitted to take the bar exam.  (Id.)

The bar exam itself is a two-day test that is written and administered by the Board of Bar Examiners.  (Doc. 38, p. 3.)  The exam consists of a multiple-choice component known as the "MBE" and two separate writing components—two essays collectively called the "MPT" and four Georgia-specific essays.  (Id.)  After the exam, the completed MBE answer sheets are sent to the National Conference of Bar Examiners to be graded by a machine.  (Doc. 37-12, p. 33.)  The scores are sent to the OBA, and any individual who does not score at least a 115 on the MBE portion of the exam is deemed an "automatic fail," meaning the applicant's essays are not submitted for grading.  (Doc. 38, p. 7.)  The essays that are submitted for grading are then graded by the Board of Bar Examiners, and the completed scores are entered into a database.  (Id. at p. 5.)  A score of 270 or higher qualifies as a "passing score."  (Id.)  Before the scores are finalized, the essays of individuals who received an initial score within five points below 270—or 265 to 269—are regraded.  (Id.)  Once the regrades are complete, the new scores are entered into the database.  (Id.)  Applicants are then notified of the results electronically.  (Doc. 10-2, p. 4.)

## II.    The Software Program and Underlying Contract

Defendant ILG is a technology company that creates custom software, and Mr. Misman is ILG's sole proprietor.  (Doc. 37-9, p. 16; doc. 38, p. 3.)  At all times relevant to this action, Defendants had a contract with the OBA to create and provide a computer program that would facilitate the entire bar admission process (hereinafter "the Contract").  (Doc. 38, p. 3; doc. 38-1.)  It is undisputed that Plaintiffs were not parties to the contract between Defendants and the OBA.  (Doc. 10-1, p. 2; doc. 38-6, p. 2.)  The Contract states that Defendants "promise[d] to provide, and OBA promise[d] to pay for, a complete, customized, turn-key system of enterprise for digitizing and electronically administering the entire bar admission process."  (Doc. 38-1, p. 3.)  The system was intended to be a "user-friendly" way for the OBA to organize "the data that is received from the fitness application and the data that's received from the [] bar examination process."  (Doc. 38, p. 3.)  It was also intended to efficiently and effectively communicate the relevant data to bar applicants.  (Id.)

The software designed by Defendants was used by the OBA and the Boards to calculate the scores and communicate the results of the July 2015 and February 2016 bar exams.  (Doc. 10-1, pp. 2–3; doc. 38-6, pp. 2–3.)  All communications through the software came from the OBA and the Board of Bar Examiners; Plaintiffs were never contacted by Defendants.  (Doc. 38-6, p. 2.)

## III.    Overview of Claims

In this lawsuit, Plaintiffs request relief for: (1) the cost of taking additional bar exams; (2) the cost of additional study materials; (3) loss of income; (4) injury to their property right in the employment of the legal profession; and (5) injury to their reputations.  (Doc. 63, pp. 8–9.)  To seek these damages, Plaintiffs assert six theories of liability.  First, Plaintiffs allege that

Defendants committed acts of negligence by "failing to accurately calculate, record, and/or report Plaintiffs' and the class members', Bar Exam Grades." (Id. at p. 8.) Plaintiffs also argue that Defendants breached their contract with the OBA, and that Plaintiffs were third-party beneficiaries to that contract. (Id. at pp. 11–12.) Further, Plaintiffs claim that because they relied on the incorrect results to their detriment, Defendants are liable to them for negligent misrepresentation. (Id. at p. 10.) Plaintiffs also allege Defendants breached their duties to exercise reasonable care in designing a software free of unreasonable risks and to provide a merchantable product, meaning Plaintiffs are entitled to damages in strict products liability and for negligent design. (Id. at pp. 12–13.) Additionally, Plaintiffs argue that the software's incorrect results constitute false publications and that Defendants are thus liable for defamation. (Id. at 13.)

Plaintiffs initially requested a regrade of July 2015 and February 2016 bar exams scoring between 259 and 264. (Id.) However, Plaintiffs "withdrew" this claim in their Response to Defendants' Motion for Summary Judgment, (doc. 38, p. 26), and indicate the claim as "withdrawn" in their Amended Complaint, (doc. 63, p. 10). Finally, Plaintiffs seek attorney's fees due to Defendants' alleged bad faith, stubborn litigiousness, and having caused Plaintiffs unnecessary trouble and expense. (Id.) In their Motions, Defendants seek summary judgment on all of Plaintiffs' claims asserted in Plaintiffs' initial and Amended Complaints. (Docs. 10-2, 65.)

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011)

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving parties would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving parties' case or that the nonmoving parties would be unable to prove their case at trial.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  If the moving party discharges this burden, the burden shifts to the nonmovants to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving parties.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the non-moving parties only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. (citation and emphasis omitted).

## DISCUSSION

### I. Choice of Law

In this diversity action, the Court must apply the choice-of-law rules of its forum state of Georgia to determine which state's substantive laws apply. <u>Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.</u>, 135 F.3d 750, 752 (11th Cir.1998). The claims discussed in this Order resound in contract and tort. The at-issue contract between the OBA and Defendants contains a choice of law provision, wherein the parties agreed that the contract "will be governed by and construed solely in accordance with the law of the State of Georgia." (Doc. 38-1, p. 23.) Georgia courts generally enforce choice-of-law provisions unless the application would contravene public policy. <u>See</u> <u>Becham v. Synthes USA</u>, 482 F. App'x 387, 390-91 (11th Cir. 2012) (per curiam). The parties have not provided any reason for the Court not to follow the Contract's choice of law provision in this case. Accordingly, Plaintiffs' breach of contract claim will be analyzed under Georgia law. <u>See</u> <u>Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.</u>, 704 F.3d 927, 932 (11th Cir. 2013) ("The parties have not offered any reason why the choice-of-law provision above contravenes strong public policy, and the court is aware of no such reason. Accordingly, [the law of the forum designated in the choice of law provision] applies in determining whether [the plaintiff] is an intended third-party beneficiary to [the contract].")

As to Plaintiff's tort claims, in tort actions, "Georgia continues to apply the traditional choice of law principles of *lex loci delicti*." <u>Willingham v. Glob. Payments, Inc.</u>, No. 1:12-CV-01157-RWS, 2013 WL 440702, at *14 (N.D. Ga. Feb. 5, 2013). "The rule of *lex loci delicti* [] requires application of the substantive law of the place where the tort of the wrong occurred." <u>Carroll Fulmer Logistics Corp. v. Hines</u>, 710 S.E.2d 888, 889 (Ga. Ct. App. 2011). The parties do not dispute that the events giving rise to this action took place in the state of Georgia. Thus,

Plaintiffs' claims for negligence, negligent misrepresentation, negligent design, product defect, and defamation are governed by Georgia law.[3]

## II.  Defendants are Entitled to Summary Judgment on Claims of Breach of Contract

Plaintiffs assert a breach of contract claim against Defendants, arguing that "Plaintiffs and those similarly situated were intended beneficiaries of the contract" between the OBA and Defendants ("the Contract").  (Doc. 63, p. 11.)  In their original Motion for Summary Judgment, Defendants argue that, because Plaintiffs are not parties to the Contract, they cannot recover.  (Doc. 10-2, p. 19.)  Defendants also allege that Plaintiffs failed "as a matter of law to establish that they are third-party beneficiaries."  (Id.)

Under Georgia contract law, "[t]he doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it.  Wirth v. Cach, LLC, 685 S.E.2d 433, 434 (Ga. Ct. App. 2009).  Here, it is undisputed that Plaintiffs are not parties to the Contract and, thus, are not in contractual privity with Defendants.  (Doc. 38-6, p. 2.)  "As a general rule, one not in privity of contract with another lacks standing to assert any claims arising from violations of the contract."  Dominic v. Eurocar Classics, 714 S.E.2d 388, 391 (Ga. Ct. App. 2011); see O.C.G.A. § 9-2-20(a).  However, an exception to this rule is codified in O.C.G.A. § 9-2-20(b), which provides that "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract."  Such a person, known as a third-party beneficiary, has standing to enforce a contract where "the promisor engages to the promisee to render some performance to a third person."  Dominic, 714 S.E.2d at 391 (citations omitted).

---

[3]  Moreover, because the parties have only argued Georgia law and have not offered the substantive law of any other state, Georgia law applies.  See Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989) ("[B]ecause the parties failed to consider the choice of law in this diversity case, we must presume that the substantive law of the forum [] controls.") (citation omitted).

To decide whether a contract was intended to benefit a third party, courts must look at the contract itself. Where the parties do not dispute which writing constitutes the operative contract and the terms of the contract are not ambiguous, the determination of third-party beneficiary status is a question of law. See id. at 391 (treating question of third-party beneficiary status as question of law where contractual language was not in dispute); Kaesemeyer v. Angiogenix, Inc., 629 S.E.2d 22, 24 (Ga. Ct. App. 2006) ("Construction of a written contract is a question of law for the trial court based on the intent of the parties as set forth in the contract."); cf. Encompass Indem. Co. v. Ascend Techs., Inc., No. 1:13-CV-02668-SCJ, 2015 WL 10582168, at *6 (N.D. Ga. Sept. 29, 2015) (finding fact dispute as to third party beneficiary status due to factual dispute as to whether contract existed); Arvida/JMB Partners, L.P.-II v. Hadaway, 489 S.E.2d 125, 128 (Ga. Ct. App. 1997) (trial court did not err in submitting ambiguous contract to jury where rules of construction failed to decipher meaning). In such a case, a court is not permitted to use parol evidence to interpret the terms of the contract. O.C.G.A. § 13-2-2(1) (parol evidence used to explain latent or patent ambiguities in a contract); see generally Fluid Equip. Int'l Ltd. v. Reddy-Buffaloes Pump, Inc., No. 2:16-CV-150, 2017 WL 4404247, at *4 (S.D. Ga. Sept. 29, 2017) ("[T]he court is generally permitted to use parol evidence to resolve ambiguities in contracts."). However, even where parol evidence is permissible, "[p]arol evidence cannot confer third-party beneficiary status where the contract itself fails to do so . . . ." CDP Event Servs., Inc. v. Atcheson, 656 S.E.2d 537, 540 (Ga. Ct. App. 2008) (citation omitted)). Here, there is no question as to the relevant contract and neither party argues that the Contract's language is ambiguous. Thus, the Court will look only to the Contract itself to determine whether Plaintiffs are third-party beneficiaries to the Contract between Defendants and the OBA.[4]

---

[4] Plaintiffs cite to testimony from Mr. Misman's deposition where it appears he identifies bar applicants as beneficiaries to the Contract. (Doc. 38, p. 25.) As noted above, the Court cannot consider parol

"A party's status as a third-party beneficiary depends upon the intention of the contracting parties to benefit the third party, and this intention is determined by a construction of the contract as a whole." Am. Fletcher Mortg. Co. v. First Am. Inv. Corp., 463 F. Supp. 186, 195 (N.D. Ga. 1978). Additionally, the parties' intent must be identifiable on the face of the contract. Atcheson, 656 S.E.2d at 539. "[I]t must clearly appear from the contract that it was intended for [another's] benefit." Boller v. Robert W. Woodruff Arts Ctr., Inc., 716 S.E.2d 713, 717 (2011) (citations omitted). Importantly, "a third party is entitled to enforce only those specific provisions of a contract of which he is an intended beneficiary." Archer W. Contractors, Ltd. v. Estate of Pitts, 735 S.E.2d 772, 779 (Ga. 2012); see also City of Atlanta v. Atl. Realty Co., 421 S.E.2d 113, 118 (Ga. Ct. App. 1992) ("In appearing that Atlantic is an intended third party beneficiary to that paragraph 16 of the construction contract, Atlantic has the requisite standing to sue Banks, the promisor **of that provision**, for any breach **of that provision**, pursuant to OCGA § 9–2–20(b)." (emphasis added)).

Defendants argue that the Contract does not contain language indicating that Plaintiffs have standing to enforce it. Specifically, Defendants note that the Contract does not "identify Plaintiffs or other bar applicants as intended beneficiaries," "promise specific benefits [or] offer [Plaintiffs] any warranties," and "does not expressly state that bar applicants can sue Defendants." (Doc. 10-2, p. 20.) In response, Plaintiffs rely on Section 1.1 of the Contract, which states in relevant part,

> ILG promises to provide, and OBA promises to pay for, a complete, customized, turn-key system of enterprise software for digitizing and electronically administering the entire bar admission progress (hereinafter the "*Solution*"). The *Solution* will include a . . . system for OBA's correspondence with applicants . . . .

evidence and, thus, will not consider this testimony in its analysis. However, even if this testimony could be considered to interpret Plaintiffs' status under the Contract, it would not alter the result. Mr. Misman merely explains that, as users of Defendants' software, bar applicants benefit from its existence, not that they are intended beneficiaries as required to receive third-party beneficiary status. (Id.)

> The *Solution* will come with complete instructions and will provide for receiving and processing the [applications] and for conducting all related activities of OBA and the Bar admission process. Toward this end, ILG will provide to OBA, tailor to OBA's particular activities, license, install, populate with existing data, and support and maintain [the software] . . . .

(Doc. 38, p. 24; doc. 38-1, pp. 3–4.) The parties disagree on how this section should be interpreted. According to Plaintiffs, "[t]he whole purpose of the contract, as stated on the contract's first page [in Section 1.1], was to benefit the Plaintiffs[.]" (Doc. 38, p. 25.) Plaintiffs claim Section 1.1's use of the word "applicants" demonstrates that "[t]he cornerstone of the contract was to communicate with bar applicants regarding whether the applicants were admitted to the practice of law." (Id.)

The record before the Court demonstrates that, as a matter of law, Plaintiffs are not third-party beneficiaries of the contract between Defendants and the OBA *for purposes of this action*. As noted above, "a third party is entitled to enforce only those specific provisions of a contract of which he is an intended beneficiary." Archer, 735 S.E.2d at 779. Looking to the language in Section 1.1—the provision used to support Plaintiffs' claim—it does not "clearly appear from the contract itself that both contracting parties intended to benefit [Plaintiffs.]" Kaiser Aluminum & Chemical Corp. v. Ingersoll-Rand Co., 519 F. Supp. 60, 72 (S.D. Ga. 1981). In fact, Section 1.1 unambiguously provides that ILG was to: (1) create software for the OBA; (2) tailor it to the OBA's particular needs; (3) so the OBA could carry out its duties of facilitating admission to the Georgia bar. (Doc. 38-1, pp. 3–4.) Contrary to Plaintiffs' interpretation, the mention of "applicants" in this section is in the course of describing how the software created by ILG will assist *the OBA* in *their* communication with bar applicants—a necessary aspect of the OBA's admission process. See, e.g., Kaiser, 519 F. Supp. at 72 ("The fact that a third party is mentioned in [a] contract does not necessarily indicate that a third party beneficiary situation is created.").

Because the contracting parties, Defendants and the OBA, did not intend for Plaintiffs to be beneficiaries of the contractual provisions Plaintiffs allege Defendants breached, Plaintiffs cannot sue to enforce those provisions as third-party beneficiaries.

In comparison, other provisions in the Contract could render Plaintiffs third-party beneficiaries *as to those provisions*. "Georgia law is clear that there must be 'a promise by the promisor to the promisee to render some performance to [the] third person[.]'" AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356, 1361 (11th Cir. 2007). Thus, for Plaintiffs to be deemed third-party beneficiaries, there would need to be an agreement between the promisor—Defendants—and the promisee—the OBA—that Defendants would do something for Plaintiffs. The Contract has several provisions in which Defendants promised to provide support and make certain features available to applicants. Specifically, Defendants promised to: (1) make an electronic communication portal for use by bar applicants, (doc. 38-1, p. 4); (2) provide support to bar applicants who sought to use Defendants' software or encountered difficulty, (id. at pp. 9, 11); and (3) maintain the confidentiality of all information regarding individual bar applicants, (id. at p. 16). While Plaintiffs may have been intended beneficiaries of these contractual provisions, they are not intended to be beneficiaries of the provisions that they claim Defendants breached. As discussed above, the contractual provision that Plaintiffs are attempting to enforce provides that Defendants promised the OBA to create a software program capable of calculating scores for the OBA—not Plaintiffs; as such, Plaintiffs have no standing to enforce it. See, e.g., LF Factors, LLC v. Witex USA Flooring, Inc., No. 4:11-CV-0299-HLM, 2013 WL 12290852, at *7 n.23 (N.D. Ga. May 6, 2013) (in order to be a third-party beneficiary, a party would have to demonstrate such intention as to a specific provision).

The fact that Plaintiffs could have benefited from the proper performance of the Contract and were indelibly harmed due to Defendants' alleged failure to properly perform their contractual duties does not alter this result under Georgia law. For example, the Georgia Supreme Court denied third-party beneficiary status to plaintiffs that suffered wrongful death and personal injury during the tragic bombing in Centennial Olympic Park during the 1996 Olympic Games. Anderson v. Atlanta Comm. for the Olympic Games, 537 S.E.2d 345 (Ga. 2000). There, the plaintiffs were injured while visiting the park, and the defendants had agreed to secure the park through a contract with the Atlanta Committee for the Olympic Games. Id. at 347. Plaintiffs argued that as visitors to a park that defendants had contracted to secure, the plaintiffs were intended beneficiaries of the contract. Id. at 349–350. The Georgia Supreme Court rejected this argument because the contract did not evidence intent to confer a benefit on park visitors and the defendants did not assume or owe a duty to park visitors to protect or warn them. Id.; see also Gay v. Ga. Dept. of Corr., 606 S.E.2d 53 (Ga. Ct. App. 2004) (inmates were incidental beneficiaries to contract for provision of safety gear because supplier did not agree to render any specifically identified performance to the inmates).

Neither Plaintiffs' argument that the "whole purpose" of the Contract was for the OBA to deliver accurate test results to applicants like Plaintiffs nor Plaintiffs' status akin to customers of the OBA changes this result. Customers, particularly customers of public entities, are often natural beneficiaries of a contract yet are not considered intended beneficiaries for purposes of contract enforcement. City of Atlanta v. Benator, 714 S.E.2d 109, 115 (Ga. Ct. App. 2011). Benator provides a telling example of how Georgia courts approach the question of third-party beneficiary status when faced with facts analogous to those presented here. There, residents of the City of Atlanta sued companies that had contracted with the city to provide water and sewer

services.  Id. at 111.  Pursuant to the contract, the defendant companies had installed new technology to read and transmit the plaintiffs' water consumption from the plaintiffs' water meters.  Id.  Plaintiffs alleged that a malfunction in the defendants' computer software caused their water consumption to be miscalculated resulting in overbilling.  Id.  The Georgia Court of Appeals found that the plaintiffs were not third-party beneficiaries to the contract between the city and the defendant companies.  The court held that, while the contract contained provisions regarding installation and customer service, those provisions did not "manifest a clear intent to confer the specific benefit claimed by the plaintiffs in this case with regard to the accuracy of their water bills."  Id. at p. 115.  Though the contract benefitted plaintiffs indirectly, the court found those benefits "only incidental" and thus denied them third-party beneficiary status.  Like the situation in Benator, the Contract in this case certainly contemplates that Plaintiffs will receive some benefits.  However, even if the purpose of the Contract was for Defendants to provide the OBA with accurate test results so that the OBA would then communicate those results to Plaintiffs, that general purpose does not make Plaintiffs intended beneficiaries.  Put another way, the Contract does not "manifest a clear intent to confer the specific benefit claimed by the plaintiffs in this case with regard to the accuracy of their [bar exam results]."  Id.; see also Dominic, 714 S.E.2d at 391 (finding no third party beneficiary status and denying argument similar to Plaintiff's "whole purpose" argument when rejecting plaintiff's position that "where an owner takes his vehicle to a mechanic and the mechanic takes the vehicle to another, more specialized repair facility, both the mechanic and the specialized repair facility know or should know that the beneficiary of the work is the vehicle's owner").

The record demonstrates that Plaintiffs are not in privity of contract with Defendants. Further, under Georgia law, Plaintiffs were not intended beneficiaries of the contractual

provisions that they seek to enforce. Therefore, Plaintiffs cannot recover under a breach of contract theory as third-party beneficiaries. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment on this claim.

### III. Defendants are Entitled to Summary Judgment on Claims of Ordinary Negligence, Strict Liability (Product Defect), and Negligent Design

In their original and Amended Complaints, Plaintiffs assert a claim of ordinary negligence against Defendants. (Doc. 1-3, pp. 7–8; doc. 63, pp. 7–10.) Plaintiffs allege that Defendants breached their duties to: (1) ensure accurate grading of the July 2015 and February 2016 exams; and (2) accurately report the results. (<u>Id.</u>) In their original Motion for Summary Judgment, Defendants argue Georgia's economic loss rule prohibits Plaintiffs from basing a negligence claim on a breach of those duties. (Doc. 10-2, p. 7.) Specifically, Defendants contend that Plaintiffs have no evidence of injuries to their person or property, that any duty owed to Plaintiffs was a consequence of Defendants' contract with the OBA, and, because Plaintiffs were not parties to the Contract, "Georgia law recognizes no legal duty running from Defendants to Plaintiffs that would permit Plaintiffs to recover[.]" (<u>Id.</u> at pp. 7–10.) In their Amended Complaint, Plaintiffs add a claim of strict liability, arguing they are entitled to damages due to Defendants' software being a defective product. (Doc. 63, p. 12.) Plaintiffs also assert a claim of negligent design and allege that Defendants "breached their duty to exercise reasonable care to design, test, develop, inspect, market, distribute and sell the subject product free of an unreasonable risk of injury to users and others reasonably affected by the software, including Plaintiffs." (<u>Id.</u> at p. 13.) In their Supplemental Motion for Summary Judgment, Defendants argue that the economic loss rule argument applies with equal force to these additional claims as it did to Plaintiffs' ordinary negligence claim. (Doc. 65, pp. 3–5.) Plaintiffs oppose the application of the economic loss rule in both of their Responses. (Doc. 38, pp. 12–

15; doc. 77, pp. 5–6.) Accordingly, a brief discussion of the economic loss rule in Georgia is in order before assessing the rule's application to Plaintiff's claims.

### A.    History of the Economic Loss Rule

Stated most basically, the economic loss rule limits the ability of contracting parties to sue one another for negligence and is used "to distinguish between those causes of action that may be brought only in a contract [] action and those that give rise to an action in tort." See Flintkote Co. v. Dravo Corp., 678 F.2d 942, 948 (11th Cir. 1982). The economic loss rule has its foundation in cases that limited the ability of contracting parties to sue one another for negligence. In essence, Georgia courts do not allow contracting parties to bring negligence claims for pure economic losses against one another unless some special relationship between the parties exists, such as the relationship between an attorney and her client. See, e.g., Orkin Exterminating Co. v. Stevens, 203 S.E.2d 587, 591 (Ga. Ct. App. 1973) (disallowing claim for economic losses based on negligent performance of contractual duty to properly treat termite infestation); Mauldin v. Sheffer, 150 S.E.2d 150 (Ga. Ct. App. 1966) (allowing negligence claim for economic losses against professional mechanical engineer). However, the evolution of this seemingly straightforward legal doctrine has often confounded law students, lawyers, and jurists.[5]

The economic loss rule emerged in the products liability arena as a way to prevent individuals from receiving double recovery for the same wrongdoing. See Gen. Elec. Co. v. Lowe's Home Ctrs. Inc., 608 S.E.2d 636, 639 (Ga. 2005) (holding that the economic loss rule "avoids the unfairness to defendants that would come with duplicative liability for the same damage."). The rule was first explicitly articulated by the Georgia Court of Appeals in Long v.

---

[5] The irony that this case presents like a bar exam hypothetical involving difficult to imagine facts and invoking long-standing but often difficult to decipher legal doctrines is not lost on the court.

<u>Jim Letts Oldsmobile, Inc.</u>, 217 S.E.2d 602 (Ga. Ct. App. 1975).[6] There, the plaintiff brought an action against the manufacturer and seller of a new car, seeking damages for the diminution in value of the car, cost of repairs, loss of use of the car while it was being repaired, time lost from work, and inconvenience. <u>Id.</u> The Court of Appeals explained that, while plaintiffs may recover in tort for personal injuries and damage to property other than the at-issue product, recovery for the loss of value or cost of repairing the product itself is not permitted. <u>Id.</u> at 604–605. Instead, a plaintiff must rely on a contract action to recover the "benefit of his bargain." <u>Id.</u> In <u>Jim Letts</u>, this meant the plaintiff could not maintain his negligence action against either defendant for the damages he sought. <u>Id.</u> As the Eleventh Circuit Court of Appeals explained when summarizing <u>Jim Letts</u> and cases issued shortly thereafter,

> These decisions indicate that the Georgia Court of Appeals has generally looked at the nature of the damages suffered by a plaintiff in determining whether a suit may be brought in tort or only in contract. Although the harm suffered may not in all instances suffice to distinguish between a tort and contract action, . . . the Georgia decisions addressing this issue have in almost all cases held that a plaintiff simply cannot recover in tort for economic losses resulting from loss of value or use of the thing sold, or the cost of repairing it.

<u>Flintkote</u>, 678 F.2d at 947.[7] "The rationale behind the economic loss rule is that the purpose of products liability actions in tort is to redress physical injuries and not the losses of bargains by disgruntled customers, which are best addressed through contract and warranty law." Robert M.

---

[6] Judge Kravitch's decision in <u>Flintkote</u> provides an informative review of the early origins of Georgia's economic loss rule. For a more recent summary and critique of the evolution of the rule in Georgia, see Stacey Carroll, *Simple Negligence and Economic Losses Don't Mix in Georgia*, accessible at http://carroll-firm.com/wp-content/uploads/2013/12/Economic-Loss-Rule-Article.pdf.

[7] The economic loss rule is now codified in Georgia and provides, in relevant part,

> [I]f [a] tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, except in cases where the party would have a right of action for the injury done independently of the contract.

O.C.G.A. § 51-1-11(a).

Travis & Edward C. Brewer, III, *Products Liability Law in Georgia Including Recent Developments*, 43 Mercer L. Rev. 27, 57 (1991).

Since <u>Jim Lett</u>, Georgia courts have expanded the rule far beyond its initial breadth.  <u>See</u> <u>Benator</u>, 714 S.E.2d at 116 ("More recently, however, both the Georgia Supreme Court and this court have applied the economic loss rule outside of product liability cases.").  In <u>General Electric Co. v. Lowe's</u>, the Georgia Supreme Court applied the rule outside the products liability context for the first time and outlined the rule's broad reach.  608 S.E.2d 636.  There, the plaintiff, Lowe's, entered into a lease agreement with a developer to use the property adjacent to its existing store for a much larger store.  <u>Id.</u> at 637.  It was later discovered that the defendant, General Electric, had contaminated the property.  <u>Id.</u>  Therefore, Lowe's contract with the developer was cancelled.  <u>Id.</u>  Lowe's brought a negligence claim against General Electric and won a significant jury verdict for lost profits.  <u>Id.</u>  However, on a certified question from the Eleventh Circuit, the Georgia Supreme Court held that the economic loss rule prevented Lowe's recovery.  <u>Id.</u> at 638–39.  Thus, not only did the court apply the rule to claims outside of the products liability context, it applied the rule despite a lack of contractual privity between Lowe's and General Electric.  The court explained,

> The economic loss rule generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract, not tort.  Under the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property; a plaintiff cannot recover economic losses associated with injury to the person or damage to the property of another.
>
> <u>Id.</u> at 637.

The Georgia Court of Appeals subsequently extended the rule even further in <u>Remax The Mountain Co. v. Tabsum, Inc.</u>  634 S.E.2d 77, 78–79 (Ga. Ct. App. 2006).  There, the court applied the economic loss rule to prevent the recovery of lost profits in a case where neither a

product nor a contract was involved.  Id.  The court acknowledged the rule's expansion and explained,

> [a]lthough the economic loss rule is more often applied in the context of products liability cases or to distinguish between those actions cognizable in tort and those that may be brought only in contract [citation omitted], the reasoning behind the rule, as set forth in Lowe's, seems equally applicable to the situation here.

634 S.E.2d at 79 n.5.  Consequently, though the economic loss rule may have its origins in cases involving contractual privity and products liability, its reach in Georgia has extended to also encompass cases that involve neither.  See Benator, 714 S.E.2d at 116 (affirming dismissal of claims by water customers against city contractor because plaintiffs were only seeking overpayments of money—not "damages due to injury to their persons or to their real or personal property."); J. Kinson Cook of Ga. v. Heery/Mitchell, 644 S.E.2d 440, 445–46 (Ga. Ct. App. 2007) (affirming dismissal of negligence claims under economic loss rule brought by construction manager against general contractor because manager *not* in privity of contract with construction manager).

Despite this growth in applicability, there are instances where the economic loss rule does not apply.  First, the rule does not bar recovery of purely economic losses in tort actions where the defendant breaches a duty imposed by law or arising from a special relationship.  See Unified Servs., Inc. v. Home Ins. Co., 460 S.E.2d 545, 547 (Ga. Ct. App. 1995) (tort actions permitted where conduct "breaches a duty imposed by law."); Bulmer v. S. Bell Tel. & Tel. Co., 317 S.E.2d 893, 895 (Ga. Ct. App. 1984) ("Absent a special relationship, no action for breach of a duty arising from a contract exists independent of the contract."); In re Arby's Rest. Grp. Inc. Litig., No. 1:17-CV-0514-AT, 2018 WL 2128441, at *12 (N.D. Ga. Mar. 5, 2018) ("The independent duty exception to the economic loss rule applies in cases where the plaintiff identified a statutory or common law duty that would have applied regardless of the existence of

an underlying contract."); <u>Hanover Ins. Co. v. Hermosa Const. Grp., LLC</u>, 57 F. Supp. 3d 1389, 1396 (N.D. Ga. 2014) ("independent duty" exception to the economic loss rule "has been applied in cases where the plaintiff identified a statutory or common law duty that would have existed absent the underlying contract."). Relationships that will give rise to such a "legal duty" include an attorney and client, physician and patient, carrier and passenger, or a principal and agent. <u>Bulmer</u>, 317 S.E.2d at 895. Negligence actions involving such special relationship, regardless of contractual duties, are generally allowed because the law imposes an independent duty of care. <u>Id.</u>

Additionally, the economic loss rule does not apply to claims where a plaintiff seeks to recover damages for harm to his person or property. <u>See</u> <u>Bates & Assocs., Inc. v. Romei</u>, 426 S.E.2d 919, 921 (Ga. Ct. App. 1993) ("The rule does not prevent a tort action to recover for injury to persons or to property[] because the duty breached in such situations generally arises independent[ly].") Further, "Georgia has recognized two exceptions to the economic loss rule: the misrepresentation exception and the accident exception." <u>Home Depot U.S.A., Inc. v. Wabash Nat. Corp.</u>, 724 S.E.2d 53, 59 (Ga. Ct. App. 2012).

In sum, Georgia courts generally apply the economic loss rule in tort actions where a plaintiff seeks purely economic damages. If a plaintiff is in privity of contract with a defendant and the alleged breach relates to a duty imposed by the parties' contract, the plaintiff can only recover in contract, not in tort. O.C.G.A. § 51-1-11(a). Similarly, third parties who are not in privity of contract with a defendant cannot recover in tort based on a breach of duties that arise from a contract. <u>Id.</u> Additionally, in *all* negligence-based tort actions where a plaintiff seeks to recover purely economic losses—regardless of contractual privity—the economic loss rule precludes recovery in the absence of a duty imposed by law, an accident, or misrepresentation.

## B.    Application of Economic Loss Rule to Plaintiffs' Claims

Having examined the expanding contours of Georgia's economic loss rule, the Court now addresses whether Plaintiffs' ordinary negligence, strict liability (products defect), and negligent design claims fall within those bounds.

### (1) Plaintiff Does not Allege a Duty Imposed by Law that Would Exempt Application of the Rule

As discussed above, Plaintiffs are neither parties nor third-party beneficiaries to the contract between ILG and the OBA; thus, as "privity of contract between the parties does not exist, to constitute a tort, the duty must arise independent of the contract." Dominic, 714 S.E.2d at 392 (quoting J. Kinson, 644 S.E.2d at 446). "Whether a duty exists upon which liability can be based is a question of law." City of Rome v. Jordan, 426 S.E.2d 861, 862 (Ga. 1993) (internal citations omitted).

In their Response to Defendants' original Motion for Summary Judgment, Plaintiffs argue that the economic loss rule does not bar their negligence claim because Defendants owed them a duty that arose "independent" of the Contract. (Doc. 38, p. 13.) Plaintiffs contend that Defendants owed them a duty to provide "software suitable to its intended purpose"—that is, software that would not produce or report "erroneous results." (Id.)[8] Defendants maintain that their alleged negligence pertained to the performance of the Contract, meaning the economic loss rule bars Plaintiffs' claim. (Doc. 10-2, pp. 7–10.)

The Court agrees with Defendants. The two purportedly negligent acts raised by Plaintiffs—scoring and reporting test results—are functions explicitly contemplated in their contract with the OBA. In the Contract, Defendants represent that the software will allow the OBA to "[g]enerate exam documents" including "[e]xam scores," (doc. 38-1, p. 48), and that the

---

[8]  Plaintiffs do not reassert their duty argument in their Response to Defendants' Supplemental Motion for Summary Judgment. (Doc. 77.)

software could be used for "[p]ublishing exam results," (id. at p. 33). The Contract also contains language demonstrating that ILG had a duty to ensure these functions operated properly, such as: (1) discussing the inclusion of certain features to "prevent errors during data entry," (id. at p. 39); (2) promising to use their best efforts to "cure" errors, (id. at p. 66); (3) to provide "hot fixes" as necessary, (id. at p. 62); and (4) promising to provide no-cost "correction[s]" or "improvement[s]," (id. at p. 7). Thus, the Contract created Defendants' duties to provide a software that adequately scored and reported exam scores—the breach of which Plaintiffs seek to recover for.

Plaintiffs also argue that "[t]he duty in this case 'arises out of the general duty one owes to all the world not to subject them to an unreasonable risk of harm.'" (Doc. 38, p. 13 (quoting Bradley Center, Inc. v. Wessner, 296 S.E.2d 693, 695 (Ga. 1982).) However, Georgia courts have not found that this type of "general duty" exempts claims from the economic loss rule. As explained above, the "legal duties" that fall outside the rule generally arise out of statutory and common law and often involve special relationships such as an attorney and client, physician and patient, carrier and passenger, or a principal and agent. Bulmer, 317 S.E.2d at 895; Hanover Ins. Co., 57 F. Supp. 3d at 1396. Furthermore, the Eleventh Circuit rejected a nearly identical argument in The Pillsbury Co. v. W. Carrollton Parchment Co., 210 F. App'x 915, 919 (11th Cir. 2006) (per curiam). There, the plaintiff argued the economic loss rule did not apply because defendant had breached "the general duty of care, a public duty owed by [defendant] to the public in general." Id. The district court rejected this argument, and the Eleventh Circuit agreed holding "there is no basis under Georgia law to support the existence of such duties on the facts

of this case. Under Georgia law, public duties generally exist only as to public officers, common carriers, innkeepers, public warehousemen, and public utilities." Id. at 919 n.3.[9]

Because Plaintiffs' ordinary negligence, strict liability (products defect), and negligent design claims rely on duties arising from a contract to which they are not in contractual privity, the economic loss rule dictates that Plaintiffs cannot recover pure economic damages absent some exception to the rule. See Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc., 641 F. App'x 849, 853 (11th Cir. 2016) (per curiam) (finding the economic loss rule prevented a negligence action where the duty to protect confidential information arose from a contractual relationship).

### (2) Plaintiffs Have Not Alleged Damage to Their Person or Property

Plaintiffs also attempt to dodge operation of the economic loss rule by arguing that they are not seeking pure economic damages as contemplated by the rule. Where a party suffers damage to their person or property, recovery in tort is allowed regardless of contractual privity or lack thereof based on the premise that "the duty breached in such situations generally arises independent of the contract." Id.[10] Here, Plaintiffs allege they suffered injury to both their person—reputational damage, headaches, and nausea—and property—their right to practice law. (Doc. 38, pp. 14–17; doc. 77, pp. 5–6.) Defendants argue these bases fail as a matter of law, and the Court agrees.[11] (Doc. 10-2, p. 10.)

---

[9] The court in Pillsbury ultimately denied application of the economic loss rule because the plaintiff alleged defendant caused injury to its property. 210 F. App'x at 919.

[10] However, as explained in Silverpop, even in situations where a party suffers damage to property, the economic loss rule could still apply if the duty to not cause such damage arose only under the contract. 641 F. App'x 853–54. In that case, the counterclaimant alleged that the opposing party damaged its customer list. Id. The Eleventh Circuit held that the even assuming the counterclaimant had a property right in the customer list, the only duty to safeguard the list arose from the contract. Id. Thus, the economic loss rule applied.

[11] While Defendants rely on the "impact rule" in their analysis, the rule does not appear to be applicable in the present case. The impact rule is relevant to actions in which plaintiffs assert claims for negligent infliction of emotional distress or seek emotional damages. McConnell v. Dep't of Labor, 814 S.E.2d

Plaintiffs first contend that the economic loss rule does not bar their negligence, strict liability (products defect), and negligent design claims because they suffered physical injuries by way of damage to their reputation. (Doc. 38, p 16; doc. 77, p. 5.) Though reputational damage can be considered an injury to the person under Georgia law, "damages for this type of personal injury are recoverable only in actions alleging intentional or wanton misconduct." Hamilton v. Powell, Goldstein, Frazer & Murphy, 306 S.E.2d 340, 344 (Ga. Ct. App. 1983), aff'd, 311 S.E.2d 818 (Ga. 1984). Such conduct is not at issue in the present case. Plaintiffs do not argue or put forth evidence that Defendants partook in willful or wanton conduct; thus, they cannot recover general damages for to their reputation. See id. ("Appellant presented his case solely on the basis of negligence . . . [and] is unable to recover general damages for damage to [his] reputation."). Moreover, damages to a "[p]laintiff's profit and reputation are classic economic losses not recoverable through tort." Paws Holdings, LLC v. Daikin Applied Americas Inc., No. CV 116-058, 2018 WL 475013, at *3 (S.D. Ga. Jan. 18, 2018) (citing Lowman, 437 S.E.2d at 607 (finding loss of business was not a physical injury that would give rise to a tort-based cause of action); see Tuscumbia City Sch. Sys. v. Parmacia Corp., 871 F. Supp. 1241, 1252 (N.D. Ala. 2012) ("Consequential economic losses encompass the indirect losses, such as the loss of business, that often accompany a defective product."); Hamilton, 306 S.E.2d at 344 (damage to plaintiff's reputation was only recoverable through a breach of contract action).

The economic loss rule also "does not prevent a tort action to recover for injury to persons." Bates & Assocs., 426 S.E.2d at 921. However, Plaintiffs' negligence, products defect, and negligent design claims also cannot survive based on their headaches, nausea, and weight

---

790, 796 (Ga. Ct. App. 2018), cert. granted (Nov. 15, 2018). Here, Plaintiffs did not bring such a claim and do not seek damages for emotional anguish. (See Doc. 1-3, pp. 8–9.) Rather, Plaintiffs seek economic damages. Regardless, the Court can resolve Plaintiffs' claim by way of the economic loss rule and need not delve into the impact rule analysis.

gain. As an initial matter, Plaintiffs do not actually seek any damages relating to their physical

ailments. Put another way, Plaintiffs do not seek damages for "a loss resulting from" their

headaches, nausea, or weight gain. Massih v. Jim Moran & Assocs., Inc., 542 F. Supp. 2d 1324,

1331 (M.D. Ga. 2008), aff'd in part, 315 F. App'x 177 (11th Cir. 2008) (per curiam).[12] Further,

in response to Defendants' Motion for Summary Judgment, they did not argue that the economic

loss rule does not apply because headaches, nausea, or weight gain constitute an "injury to

person." (Doc. 38, pp. 14–18; doc. 77 pp. 5–6.) Rather, Plaintiffs focused their "injuries to

person" argument on the damage to their reputation—an argument that, as explained above, fails

as a matter of law. (Doc. 38, p. 16 ("The Plaintiffs suffered an injury to their reputation, and

therefore, the Plaintiffs suffered an injury to their person."); doc. 77, p. 5 ("The injuries to

Plaintiffs' reputations, which are personal injuries, bar application of the economic loss rule to

this case.).)

Additionally, even if Plaintiffs had made such an argument or sought these damages, they

have not cited, and the Court is not aware of, any authority from Georgia or elsewhere holding

that injuries of this type—physical manifestations of emotional distress that resulted from an

event causing economic loss—constitute "injury to persons" as that term is understood in

relation to the economic loss rule. In fact, in other contexts, courts have recognized that injuries

such as headaches, nausea, and weight gain resulting from physic trauma or emotional distress

do not constitute physical injury, injury to a person, or bodily injury. See Abernathy v. City of

Albany, 495 S.E.2d 13, 15 (Ga. 1998) (interpreting "injury" under worker's compensation statute

---

[12] Instead, Plaintiffs seek to recover pecuniary damages that are the direct results of Defendants' alleged
contractual breaches—for example, costs of retaking the bar exam and loss of income. See generally
Bates & Assocs., 426 S.E.2d at 922 (explaining that purely pecuniary losses are not recoverable damages
under the economic loss rule). As the Court has noted several times throughout this order, such damages
are "not entitled to protection against mere negligence" and are not recoverable. Id.

with reference to common law definition of "physical injury" and finding that claimant who suffered "psychic trauma and disability not preceded or accompanied by a physical injury" could not recover benefits); Harris v. Wall Tire Co., 399 S.E.2d 580 (Ga. Ct. App. 1990) (plaintiff could not recover under pecuniary loss rule because "[t]here was no injury to plaintiff's person except the emotional distress manifested by the initial fright, a sensitized stomach thereafter, temporary loss of sleep, aggravation, and necessity to devote vacation leave to attend to car repairs."); Posey v. Med. Ctr.-W., Inc., 361 S.E.2d 505, 506 (Ga. Ct. App. 1987) (plaintiff parents could not recover for emotional distress incurred due to negligent treatment and diagnosis of daughter under rule that damages are "not recoverable in the absence of physical injury" because "the [parents] do not allege that the physical injury they suffered was the result of any direct physical contact; rather, the physical injury stems from the mental distress they suffered."). Plaintiffs do not argue that their physical ailments were directly occasioned by Defendants' improper grading of their bar exam or by any defects or negligent design in the software.[13] Rather, these ailments flowed from economic injury and resulting emotional distress. Again, under the economic loss rule, Plaintiffs can recover in tort "only those economic losses resulting from injury to [their] person or damage to [their] property." Lowe's, 608 S.E.2d at 637.

---

[13] Plaintiff's situation is distinguishable from, for example, a toxic exposure that causes a plaintiff to suffer headaches and nausea. In that situation, the plaintiff could argue that the defendant's negligence caused an injury to the plaintiff's person. See, e.g., Country Club Apartments, Inc. v. Scott, 267 S.E.2d 811, 813 (Ga. Ct. App. 1980) (defendant landlord could not exculpate itself from damages to tenant's "person" and, thus, plaintiff could proceed on negligence action on lease where landlord caused carbon monoxide exposure which resulted in, among other ailments, headaches and nausea) (disapproved on other grounds by Colquitt v. Rowland, 463 S.E.2d 491, 493 (Ga. 1995); In re FEMA Trailer Formaldehyde Prod. Liab. Litig., No. MDL 07-1873, 2008 WL 5217594, at *4, nn.6–7, 17 (E.D. La. Dec. 12, 2008) (plaintiffs pled sufficient allegations regarding personal injury to skirt application of economic loss rule where they alleged personal injuries due to exposure to formaldehyde).

Plaintiffs cannot turn this principle on its head and recover injuries to their person or damage to their property resulting from economic losses.[14]

Plaintiffs also claim they suffered damage to their property. Specifically, Plaintiffs argue the economic loss rule does not apply because Defendants' negligence and defective product and design caused an injury to Plaintiffs' "right to [] employment in the legal profession." (Doc. 38, pp. 17–18; see also doc. 77, pp. 5–6.) Defendants, by contrast, correctly contend that the right to practice law is not a property right recognized under Georgia law. (Doc. 10-2, pp. 12–13.) Once again, Plaintiffs do not cite to any law standing for their propositions that an individual has a property right to practice law or that an individual can recover damages for interference with that right. However, Defendants cite several cases that stand for the opposite proposition. See, e.g., Attwell v. Nichols, 466 F. Supp. 206, 209 (N.D. Ga. 1979), aff'd, 608 F.2d 228 (5th Cir. 1979)[15] ("[T]he plaintiff has no inherent property or liberty right to practice law in Georgia."); Eckles v. Atlanta Tech. Grp., Inc., 485 S.E.2d 22, 26 (Ga. 1997) ("The right to practice law is not a natural or constitutional right, nor an absolute right or a right de jure, but is a privilege or franchise."

---

[14] Even if Plaintiffs had asserted recoverable claims for personal injuries, those injuries would not "open the door" to their recovering pecuniary losses otherwise barred by the economic loss rule. In that situation, the pecuniary losses would still not "result from" the injuries to Plaintiffs' persons. Lowe's, 608 S.E.2d at 637. In other words, even if Plaintiffs had asserted recoverable claims for headaches, nausea, and weight gain, the Court could only allow Plaintiffs to proceed on claims for those injuries and would have to dismiss their claims for the cost of taking additional bar exams; the cost of additional study materials; loss of income; injury to their employment in the legal profession; and injury to their reputations. See In re FEMA, No. MDL 07-1873, 2008 WL 5217594, at *17–18 (holding under Alabama, Mississippi, and Texas law that plaintiffs could proceed with claims of personal injury but that economic loss doctrine warranted dismissal of claims for economic losses ("to the extent that Plaintiffs seek damages in strict liability and negligence for economic losses, such claims are dismissed as they are precluded by Alabama's application of the economic loss doctrine. However, Plaintiffs may proceed with their claims under negligence and strict liability that relate to injuries and damages sustained by the plaintiffs themselves.")).

[15] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

(quotations omitted)).  As they do not allege physical damage to a property interest protected by Georgia law, Plaintiffs' argument on this issue cannot circumvent the economic loss rule.  See Remax The Mountain Co., 634 S.E.2d at 78 (plaintiffs could not escape economic loss rule because they did not seek damages for injury to personal property).

### (3) Plaintiffs' Claims do not Fall Within the Accident Exception[16]

In their Response to Defendants' Supplemental Motion for Summary Judgment, Plaintiffs focus their arguments on the accident exception to the economic loss rule.  (Doc. 66, pp. 6–7.)

> Under Georgia law, there is an accident exception to the general rule that an action in negligence does not lie absent personal injury or damage to property other than to the allegedly defective product. []  An "accident" should be defined as a sudden and calamitous event which, although it may only cause damage to the defective product itself, poses an unreasonable risk of injury to other persons or property.

Vulcan Materials Co. v. Driltech, Inc., 306 S.E.2d 253, 257 (Ga. 1983).  Plaintiffs seek to shoehorn their claims into this rule by arguing "[h]ere, the sudden and calamitous event that Plaintiffs underwent was the moment they were informed that they failed the bar exam when, in fact, they had passed."  (Doc. 77, p. 6.)

To the extent it applies at all, the accident exception could only apply to Plaintiffs' products liability claims and would not save Plaintiffs' ordinary negligence claim.  Silverpop Sys., 641 F. App'x at 853. ("[plaintiff] cites no authority that supports the application of the

---

[16] In their Response to the original Motion for Summary Judgment, Plaintiffs also contended that the negligent misrepresentation exception to the economic loss rule applies in this case.  (Doc. 38, p. 21.) However, this exception is inapplicable for the same reasons that are discussed in relation to Plaintiffs' independent negligent misrepresentation claim, addressed in Section IV below.  Additionally, this exception requires that the supplier of "false information was manifestly aware of the use to which the information was to be put. . . ." Bates & Assocs., 426 S.E.2d at 922.  Where a defendant did not know the relevant information was false, the Georgia Court of Appeals found that the element of manifest awareness had not been met.  Lowman, 437 S.E.2d 604.  Here, even assuming Defendants made a representation to Plaintiffs, they were not aware that the scores were incorrect until after the scores were released.

accident exception outside the realms of a product liability action."). Further, it is unclear that the exception could be applied at all as it is unlikely Plaintiffs could establish that their products liability claims involve a "product" as understood by the exception. Id. at 854. In Silverpop Systems, the Eleventh Circuit denied application of the accident exception on claims involving a data breach in computer network. Id. The court stated, "the parties' agreement encompassed a service and not a product." Id. Here, Defendants similarly contracted to provide a service and not a product. Even more compellingly and pertinently, the Eleventh Circuit also explained that the "the accident exception does not apply because [the claimant] does not seek to recover for any damage suffered by the 'product itself.'" Id. In this case, Plaintiffs concede that they are not seeking damage to the product at issue, Defendants' computer software. Doc. 77, p. 6–7.) Rather, focusing on the word "may" in the above-quoted language from Vulcan Materials Co., Plaintiffs claim that they don't have to allege such damage. The Eleventh Circuit's ruling in Silverpop Systems directly contradicts this argument. Moreover, as Defendants explain in their Reply brief, the accident exception developed to provide an avenue for the owner of a defective product, in certain situations, to assert a negligence claim to obtain damages for injury done to the product. (Doc. 79, p. 3.) Plaintiffs assert no such claims here.

Finally, while Plaintiffs being informed that they had failed a bar exam when they had actually passed the exam is unquestionably a tortuous event, Plaintiffs do not explain how that event "constitutes 'a calamity, sudden violence, collision with another object, or some catastrophic event,' justifying the application of the accident exception." See Silverpop Sys., 641 F. App'x at 854 (finding that plaintiff had not explained how data breach constitutes accident justifying exception to economic loss rule) (quoting Busbee v. Chrysler Corp., 524 S.E.2d 539, 542 (Ga. Ct. App. 1999)); see also Home Depot, 724 S.E.2d at 364 (noting that

"inconvenience, aggravation, or fright" did not rise to the level of an "accident" within the meaning of the exception) (citations omitted).

In sum, Plaintiffs have not alleged that Defendants violated a legal duty independent of the Contract that would circumvent the application of Georgia's economic loss rule. Moreover, Plaintiffs are seeking pure economic losses and they have not alleged recoverable damage to their persons or property that would fall outside of the rule's application.[17] Additionally, their claims do not fall within the accident or misrepresentation exceptions. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment on Plaintiffs' negligence claims, strict liability (products defect) claims, and negligent design claims due to operation of the economic loss rule.

## IV. Defendants are Entitled to Summary Judgment on Claim of Negligent Misrepresentation

Defendants also moved for summary judgment as to Plaintiffs' negligent misrepresentation claim. Under Georgia law, the tort of negligent misrepresentation has three elements: "(1) the defendant's negligent supply of false information to foreseeable persons . . . (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." Next Century Commc'ns Corp. v. Ellis, 318 F.3d 1023, 1030 (11th Cir. 2003) (per curiam) (citing Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc., 479 S.E.2d 727, 729 (Ga. 1997)). Therefore, a claim of negligent misrepresentation requires "a plaintiff [to] establish that the defendant made false representations on which the plaintiff justifiably relied." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1289 (11th Cir. 2007) (per curiam).

---

[17] As explained in note 10, supra, even if Plaintiff had shown damage to property or person, the Eleventh Circuit's opinion in Silverpop Sys., 641 F. App'x at 853, arguably still provides authority for application of the economic loss rule.

Here, the parties dispute the first element—the supply of false information—which "requires a showing of an affirmative misrepresentation[.]" Prince Heaton Enters., Inc., v. Buffalo's Franchise Concepts, Inc., 117 F. Supp. 2d 1357, 1360-61 (N.D. Ga. 2000) (citing O.C.G.A. §§ 23-2-51 through 23-2-54); see Ali v. Fleet Finance, Inc., 500 S.E.2d 914, 915 (Ga. Ct. App. 1998) (holding that a plaintiff could not set forth the elements of a negligent misrepresentation claim where there were no facts to find that the defendant had made any representation). In their Motion, Defendants argue that Plaintiffs' claim fails as a matter of law because Defendants did not communicate with Plaintiffs; rather, the OBA informed Plaintiffs of their bar exam results. (Doc. 10-2, p. 15; doc. 38-6, p. 2.) Defendants reason that this complete lack of communication to Plaintiffs necessarily shows that no misrepresentation was made, meaning "Plaintiffs cannot prove an essential element of [their] claim." (Doc. 10-2, p. 15.)

In response, Plaintiffs maintain "it is clear that Plaintiffs actually relied upon the misrepresentations by ILG," and "this representation was that ILG was accurately scoring and reporting bar exam scores."[18] (Doc. 38, p. 21.) Though it is less than clear, Plaintiffs seemingly argue that Defendants made this representation in two different ways. Plaintiffs initially point to the contract between Defendants and the OBA, stating that "the contract clearly provides that [the software] would include application communication, online pass and fail letter management, and publishing exam results." (Doc. 38, p. 22.) Plaintiffs also assert that "[t]hrough [Defendant's software], Plaintiffs were falsely informed that they had failed the Georgia Bar Exam." (Id.)

---

[18]  In their Response, Plaintiffs conflate their analyses for negligent misrepresentation as an individual claim and the negligent misrepresentation exception to Georgia's economic loss rule. (Doc. 38, pp. 21–23.)  As negligent misrepresentation and negligence are separate Counts in Plaintiffs' Amended Complaint, (doc. 63), and are addressed separately in Defendants' Motion, (doc. 10-2), the Court will assume Plaintiffs intended for the single section to apply to both the negligent misrepresentation claim as well as their argument that the negligent misrepresentation exception applies.

Despite the factual accuracy of Plaintiffs' arguments, neither the contractual terms nor the use of Defendants' software to communicate results constitute an "affirmative misrepresentation." See Prince Heaton, 117 F. Supp. 2d at 1360–61. The evidence before the Court demonstrates that Defendants never made *any* representations to Plaintiffs. First, Plaintiffs do not put forth any evidence showing they were aware of the Contract and the terms therein prior to receiving the incorrect results. A misrepresentation cannot be "affirmative" if it is never communicated at all. Additionally, while it is undisputed that bar exam results were communicated via Defendant's software, Plaintiffs admit that all communications they received were from the OBA—not Defendants. (Doc. 38-6, p. 2.) Finally, to the extent Plaintiffs argue that the software itself made the representation as the platform through which OBA sent its messages, they have not supplied the Court with any law to support this contention.

Because the existence of a misrepresentation is an essential element in a negligent misrepresentation claim and because the facts, viewed in the light most favorable to Plaintiffs, demonstrate that Defendants did not make any representations to Plaintiffs, Plaintiffs' claim fails as a matter of law. Accordingly, the Court **GRANTS** Defendants' Motion on this issue.

## V. Defendants are Entitled to Summary Judgment on Claim of Regrading of Bar Exams

In their original Complaint, Plaintiffs request a regrade of bar exams from the July 2015 and February 2016 sessions, (doc. 1-3, p. 10), but "withdrew" this claim in their Response to Defendants' Motion, (doc. 38, p. 26), and it is labeled "withdrawn" in their Amended Complaint, (doc. 63, p. 10). However, even without Plaintiffs' withdrawal, the Court would find in favor of Defendants. "Georgia's Rules Governing Admission to the Practice of Law prohibit 'the Board or any member thereof [from] regrad[ing] any applicant's answers to examination questions after the general release of grades. . . .'" In re Goodman, 578 S.E.2d 884, 884–85 (2003) (quoting Ga.

Rules Governing Admission to the Practice of Law, Part B, § 13). Accordingly, the Court **GRANTS** Defendants' Motion on this claim.

## VI. Defendants are Entitled to Summary Judgment on Claim of Defamation

In their Amended Complaint, Plaintiffs allege that Defendants' generation of incorrect scores for the July 2015 and February 2016 examinations amounts to defamation as a matter of law. (Doc. 63, pp. 13–15.) A viable defamation claim under Georgia law has four elements: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." Boyd v. Disabled Am. Veterans, No. A18A2059, 2019 WL 1109510, at *2 (Ga. Ct. App. Mar. 11, 2019). Where an allegedly defamatory statement is expressed in written form, it is actionable as libel; "[a] libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1(a); see also Zarach v. Atlanta Claims Ass'n, 500 S.E.2d 1, 4 (Ga. Ct. App. 1998). In a libel action, "[p]ublication of the statement is imperative and, without it, the defamation claim fails." Saye v. Deloitte & Touche, LLP, 670 S.E.2d 818, 821 (Ga. Ct. App. 2008) (citing OCGA § 51–5–1(b)).

Defendants argue that Plaintiffs' claim fails for two reasons. First, Defendants point to the undisputed fact that it was the OBA—not Defendants—that disseminated bar exam scores, meaning Plaintiffs cannot prove the essential element of publication. (Doc. 65, p. 7.) Second, Defendants maintain that, even if the generation of scores by the OBA via Defendants' software constituted a defamatory statement, the communication was within the scope of their contractual duties and would be privileged—and therefore not published— as a matter of law. (Id. at p. 10.)

In response, Plaintiffs do not dispute that the OBA actually released the results, but instead argue that because Defendants' software was "so integral to the defamatory communications, [] the software [] published the results." (Doc. 77, pp. 7–8.) Additionally, Plaintiffs allege that the incorrect scores were not privileged as a part of any contractual duties between Defendants and the OBA because the error was "the exact opposite of the contracted-for performance." (Id. at p. 8.) Despite Plaintiffs' creative arguments, the Court agrees with Defendants for the reasons explained below.

As noted above, Plaintiffs contend that the defamatory statements, the "false exam scores," were published by Defendants when they were generated "via their software." (Id. at p. 7.) This theory necessarily assumes that automated results from a software program can constitute a published statement. Plaintiffs have not cited to, and the Court is not aware of, any law that supports this contention. However, even if the software's computations were published statements, "Georgia law provides a well-established exception to the broad definition of publication." Koly v. Enney, 269 F. App'x 861, 864 (11th Cir. 2008) (citations omitted). "[W]hen the communication is intracorporate, or between members of unincorporated groups or associations, and is heard by one who, because of his/her duty or authority has reason to receive the information, there is no publication...." Id. (quoting Kurtz v. Williams, 371 S.E.2d 878, 880 (Ga. Ct. App. 1988)). Here, the custom software was operated by employees of the OBA and the scores were then communicated to the OBA in the same way a calculator communicates calculations to its operator. The only persons to see the scores prior to the OBA's publication of the results were employees of the OBA, and Plaintiffs do not allege that anyone without the proper authority at the OBA received the information. Thus, the software's communications—to the extent they are otherwise actionable—would not constitute a publication as they would be

"intracorporate." See Saye, 670 S.E.2d at 823 (Ga. Ct. App. 2008) (intracorporate communications are legal equivalent of speaking only to one's self); Galardi v. Steele-Inman, 597 S.E.2d 571, 576 (Ga. Ct. App. 2004) (discussion about pageant disqualification not published due to business agreement).

Additionally, as correctly argued by Defendants, any actionable statements made by their software would be privileged under Georgia law. (See Doc. 79, pp. 7–8.) Where a statement is made "in performance of [a] private duty to [a] client," the communication is privileged pursuant to O.C.G.A. § 51-5-7(2). Ass'n Servs., Inc. v. Smith, 549 S.E.2d 454, 463 (Ga. Ct. App. 2001) (a report and videotape created pursuant to private duty were privileged and therefore lacked the element of publication). Here, Defendants had a contractual duty to its client, the OBA, to create a product that generated bar exam scores. These statements were thus "made in the good faith performance of a private duty," and, accordingly, would be privileged. Id. at 462 (quoting Willis v. United Family Life Ins., 487 S.E.2d 376, 381 (Ga. Ct. App. 1997). As Plaintiffs have not demonstrated that a software program can produce an actionable defamatory statement and because, even assuming any such statement was produced, it was communicated exclusively within the OBA and done in the performance of a contractual duty, Plaintiffs have not satisfied the required element of publication and their defamation claim cannot succeed. Accordingly, the Court **GRANTS** Defendants' Motion on this issue, (doc. 65).

## VII.    Plaintiffs are not Entitled to Attorney's Fees

Plaintiffs request attorney's fees pursuant to O.C.G.A. § 13-6-11. (Doc. 63, p 10.) Under the statute, a plaintiff "must prevail on their basic cause of action in order to obtain litigation expenses." Ellis v. Gallof, 469 S.E.2d 288, 289 (Ga. Ct. App. 1996) (citations omitted). Because Plaintiffs do not have any viable claims remaining, they cannot be prevailing parties

entitled to attorney's fees.  Consequently, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiffs' claim for attorney's fees.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment, (doc. 10), and **GRANTS** Defendants' Supplemental Motion for Summary Judgment, (doc. 65).  Specifically, the Court grants summary judgment to Defendants ILG and Mr. Misman on Plaintiffs' claims for breach of contract, negligence, negligent misrepresentation, negligent design, strict products liability, defamation, the regrading of bar exams, and attorney's fees.  The resolution of these motions disposes of all claims asserted in this lawsuit.  Accordingly, the Court **DENIES as moot** all other motions pending in this case.  The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment and to **CLOSE** this case.

**SO ORDERED,** this 28th day of March, 2019.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA